222

HENKEL CONSTRUCTION COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 25, 1929.*

SCANLAN & MASSIEON, for claimant.

OSCAR E. CARLSTROM, Attorney General; FRANK R. EAGLE-TON, Assistant Attorney General, for respondent.

Mr. JUSTICE LEECH delivered the opinion of the court:

The Henkel Construction Company of Mason City, Iowa, a co-partnership consisting of William Henkel and Carl Henkel, claimants set out in their declaration that they have been engaged as general contractors in the business of building and constructing highway improvements in Illinois and other states, for several years. That the claimant submitted its bid to the Department of Public Works and Buildings, Division of Highways, at the letting held on January 17, 1927, for the building and constructing of sections 101 and 102, State Bond Issue Route 162, and were advised by the Chief Highway Engineer, of the Division of Highways, of the State of Illinois, that claimants bid was the lowest, evidenced by a copy of a letter dated February 11, 1927, signed by Frank T. Sheets, Chief Highway Engineer. The claimant was also advised by a telegram from Frank T. Sheets, Chief Highway Engineer, that the contract for building and constructing said improvement was awarded to the claimant, which telegram was confirmed by letter, a copy of which telegram and letter are attached to the declaration.

That claimant within a few days after the award of said contract entered into a contract with the State of Illinois through the Department of Public Works and Buildings, Division of Highways, for the building and constructing of said sections 101 and 102 of said State Bond Issue Route 162, and executed and delivered the bond required by law and the rules of said Division of Highways. That the said improvement of sections 101 and 102, State Bond Issue Route 162, was located

in Bureau county, Illinois, and extended from Route 7 at Spring Valley, passing through the villages of Ladd, Cherry and Arlington, to Route 18, at Lamoille.

That the claimant shortly after the notice of the award submitted to the Division of Highways, a progress chart of its proposed program for the improvement of said sections 101 and 102 and on this progress chart claimant indicated its intention to build its first set-up or proportionment plant at Ladd and from this set-up start paving operations at the south end of section 102, which was the southern most of the two sections, and work northerly to a point in the north edge of the Village of Cherry and then to establish its second set-up or proportionment plant in the Village of Arlington, and from this second set-up pave from the north edge of Cherry, northerly, to the end of section 101 at Lamoille.

That the claimant shortly after entering into said contract secured a location at Ladd, on which it located its camp and constructed its first set-up or proportionment plant, and from this set-up commenced the work of building and constructing said improvement at the south end of section 102, intending to carry on said work to the north edge of Cherry.

That the claimant on July 9, finished the work of constructing said improvement from Spring Valley north to Ladd and was ready to begin the work of laying down the concrete slab from a point north of Cherry south to Ladd, in accordance with the program for said improvement shown on the progress chart previously submitted to the Division of Highways but the said Division of Highways not having determined whether the pavement was to be built on location "A" or "B", claimant began laying down concrete pavement on July 9th, at a point south of Cherry and paved south to Ladd, finishing same on July 22nd, 1927.

That on July 22nd, 1927, the claimant having completed all of the work from the south end of section 102 to the south end of location "A" near Cherry, and being still under orders from the Division of Highways to omit all work on location "A" tore down its set-up and proportionment plant at Ladd, and moved the lumber and material of which it was constructed and also its camp to a location selected at Arlington on which it located its camp and built and erected its second set-up or proportionment plant and from this set-up, began work at a point one and one-half (1½) miles south of Arling-

ton, and commenced to lay down the concrete slab north to Arlington. Then claimant began at Route 18 at Lamoille and laid down the concrete slab south to Arlington.

The Division of Highways not having yet decided as between locations "A" and "B" claimant then began the laying down of the concrete slab at the north edge of Cherry where locations "A" and "B" intersect, and carried said work north to join up with the completed concrete pavement south of Arlington, finishing this stretch on September 24th, 1927.

That claimant by the letter of February 11th, 1927, from the Chief Highway Engineer, a copy of which is set out in full above, was advised that it was the low bidder; was also advised that all the right of way had not been secured.

That claimant expecting to be awarded the contract for said improvement became anxious about the right of way and on February 17th, 1927, wrote a letter to the District Engineer at Dixon, Illinois, who was in charge of the making of said improvement for the Division of Highways, asking what progress had been made in obtaining the necessary right of way.

The claimant received a letter from the said District Engineer, a copy of which letter is attached to the declaration, said letter being dated February 19, 1927; also a copy of a letter from District Engineer dated March 22, 1927, another letter from District Engineer dated April 1, 1927, and still another letter dated April 11th, 1927.

The claimant under date of April 18th, 1927, wrote to H. E. Surman, of the Division of Highways, at Springfield, advising that from information gathered at the Dixon office, claimant finds that the awarding of the contract on sections 101, 102 and 101B, is being held up due to relocation at Cherry, and that unless the bridges on section 101B are awarded at once the work on them will delay both the grading and slab work under the paving contract and would entail a serious loss to claimant if it would have to shut down both crews and wait for the completion of and curing of the bridges. The letter further stated that since there was no question about the right of way on section 101B claimant would like to have the award made as to the bridges on section 101B at once.

From the statement of the claimant and the copies of the letters thereto attached, there seems to be no question but what an award should be made.

The Attorney General has filed his statement of claim which is as follows:

"This is a claim for extra expenses that could not be paid by the Division of Highways, Department of Public Works and Buildings, under the contract entered into between the claimant and the respondent.

This claim was forwarded to the Division of Highways, Department of Public Works and Buildings, for report and advice as to disposition.

Said Department reported and advised by letter, a copy of which is hereto attached, marked "Exhibit A" and hereby made a part of this statement, advising that the claim was meritorious and should be allowed.

I therefore, submit this claim to the court for such disposition as they care to make, with the recommendation of the Division of Highways of the Department of Public Works and Buildings that same be allowed."

This case was submitted solely upon the statement of the claimant and the letter of C. M. Hathaway, Engineer of Construction, and from the statement, letters and evidence we find that an award should be made.

We therefore, award the claimant the sum of $2,894.00.